UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOLY GHOST REVIVAL MINISTRIES, et al., | CASE NO. C14-1154JLR |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |
| v. | |
| CITY OF MARYSVILLE, et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is Defendants' motion to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12.  (Mot. (Dkt. # 35).)  This case arises from Defendant City of Marysville's ("the City") enforcement of certain local zoning regulations against two of Plaintiffs' group housing residences.  Having considered the submissions of the parties, the balance of the record, and the relevant law, and deeming oral argument unnecessary, the court grants in part and denies in part the motion to dismiss.

## II.   BACKGROUND

The following facts are set forth in Plaintiffs' amended complaint and attached exhibits.  Plaintiffs John and Jane Mack ("the Macks") are the primary pastors of Plaintiff Holy Ghost Revival Ministries ("Holy Ghost Church").  (Am. Compl. (Dkt. # 20) ¶¶ 1.1, 1.3.)  As part of their "religious mission," Plaintiffs operate group housing residences called "Mack Houses."  (*Id.* ¶ 1.4.)  Mack Houses provide low-cost transitional housing to released convicts, some of whom are recovering from substance abuse or addiction. (*Id.* ¶¶ 1.2, 3.2.)  A high number of residents, if not all residents, are registered sexual offenders.  (*See* Compl. (Dkt. # 3) Ex. 2 at 4.)  The residents at Mack Houses receive "teachings grounded in scripture," and are required to abide by twelve-step programs and Department of Correction requirements.  (Am. Compl. ¶ 3.3.)  Plaintiffs refer to these residents as "church members," and state that "spiritual growth and adherence to scripture by this particular population of the Holy Ghost Church's membership is best achieved by in [sic] a group living situation where all strive to do the Lord's will."  (*Id.* ¶¶ 3.2, 3.5.)

Plaintiffs currently operate ten Mack Houses in Snohomish County, six of which are located in Marysville.  (*Id.* ¶ 3.8.)  One Mack House, which is owned by the Macks, is located at 904 61st Street NE in Marysville, Washington ("61st Street Property").  (*Id.* ¶¶ 3.17, 3.20.)  The Macks also use the 61st Street Property to store "large vehicles."  (*Id.* ¶ 3.18.)

//

//

Another Mack House, which is leased by Mr. Mack "d/b/a Holy Ghost Revival Ministries," is located at 15324 Smokey Point Boulevard in Marysville ("Smokey Point Property"). (*Id.* ¶ 3.14.) Plaintiffs claim that this property is used primarily as an office for the Holy Ghost Church. (*Id.* ¶ 3.15.) However, this property also includes a unit where Mack House members live. (*Id.*)

In 2013, the Macks received an Enforcement Order from the City stating that the storage of large vehicles at the 61st Street Property violated the City's zoning code. (*Id.* ¶ 3.21; 61st Hearing (Dkt. # 35-2) at 2.) The Macks also received an Enforcement Order from the City stating that the Smokey Hill Property was an inappropriate residential use and occupancy of a building on a parcel of land zoned for General Commercial use. (Am. Compl. ¶ 3.22; Smokey Hearing (Dkt. # 35-1) at 2.)

Upon receiving the Enforcement Order for Smokey Point, Mr. Mack emailed the City a proposed renovated floorplan that he believed would qualify the residence as a caretaker's unit, which is a permitted use in a General Commercial zone. (Am. Compl. ¶ 3.23.) The City responded that Mr. Mack's appeal of the Enforcement Order would be resolved by the City's Hearing Examiner. (*Id.* ¶ 3.24.) Mr. Mack then sent a "Reasonable Accommodation Request" to the City, to no avail. (*Id.* ¶ 3.26.)

The Hearing Examiner held a hearing for each Enforcement Order, during which the Macks presented testimony and argument, but were not permitted to cross-examine witnesses or raise constitutional claims. (*Id.* ¶ 3.27.) The Hearing Examiner found that the Mack House at Smokey Point, which housed six to ten male registered sexual offenders at any given time, violated the restriction against single-family residential use

1  in the General Commercial zone.  (Smokey Hearing at 7); *see also* Marysville Municipal

2  Code ("MMC") 22C.020.060 (listing the permitted uses in areas zoned "General

3  Commercial").  The Hearing Examiner also found that the Mack House did not qualify

4  under the "Caretaker's Quarter's" exception to the restriction because the residents did

5  not provide active surveillance of the adjoining businesses.  (Smokey Hearing at 6-7.)

6       In addition, the Hearing Examiner found that the storage of tractors, semi-trailers,

7  and other equipment at the 61st Property constituted a public nuisance.  (61st Hearing at

8  10-11); *see also* MMC 6.24.050(7), (27).[1]  The Hearing Examiner also concluded that the

9  Macks' predecessors had not established a prior non-conforming use.  (61st Hearing at

10  9.)

11       As a result of the Hearing Examiner's decision, the Macks temporarily closed the

12  Smokey Point Property in order to renovate it.  (Am. Compl. ¶ 3.31.)  The Macks

13  provided housing to some of the members in the interim, but others were displaced.  (*Id.*)

14  After the Macks finished renovating the Smokey Point Property to comply with the

15  Hearing Examiner's decision, an unspecified number of members resumed living there.

16  //

17

18

   [1] MMC 6.24.050 provides:  "It shall be a public nuisance within the city of Marysville, and a
19  violation of the Marysville Municipal Code, if any responsible person or persons shall maintain or allow
to be maintained on real property which he or she may have charge, control or occupy, except as may be
20  permitted by any other city ordinance, whether visible or not from any public street, alley or residence,
any of the following conditions: . . . (7) Any attractive nuisances dangerous to children including, but not
limited to, abandoned, broken or neglected buildings, equipment, machinery, refrigerators and freezers,
21  excavations, shafts, or insufficiently supported walls or fences in any front yard, side yard, rear yard or
vacant lot. . . . (27) Truck tractors, as defined in RCW 46.04.655, and semi-trailers, as defined in
22  RCW 46.04.530, that are parked, kept or stored in residentially zoned areas, on residential property in
other zones or on sites that have not been permitted, improved and approved for such use."

1   (*Id.* ¶ 3.32.)  It appears that the Macks continue to store large equipment at the 61st Street

2   Property.  (*Id.* ¶¶ 3.33-3.34.)

3          The Plaintiffs allege that the City "has an official policy and/or procedure in place

4   to discriminate against Holy Ghost Church and the Macks as a result of their religious

5   beliefs." (*Id.* ¶ 8.3.)  Plaintiffs further allege that the Defendants (which include the City

6   and various City officials) "encouraged and/or promoted citizen complaints in regards to

7   the Mack Houses," and "targeted properties owned by and/or rented by Holy Ghost

8   Church and the Macks with the purpose of manufacturing and/or purporting land use

9   violations." (*Id.* ¶ 8.4.)  Plaintiffs attach an email chain between City officials that

10  "discussed what could be done to prevent the expansion of Mack Houses in the City."

11  (*Id.* ¶ 3.12.)  The email chain does not once mention Plaintiffs' religious affiliation.  (*Id.*

12  Ex. 2.)  It does, however, repeatedly evidence the City's concern regarding the

13  accumulation of group housing for registered sexual offenders within the City.  (*See id.*)

14         Plaintiffs appealed the Hearing Examiner's decision to the Snohomish County

15  Superior Court.  (Am. Compl. ¶ 3.29.)  Plaintiffs original complaint included a petition

16  under Washington's Land Use Petition Act, ("LUPA"), RCW ch. 36.70c, alleging that

17  the Hearing Examiner's decision was incorrect.  (Compl. (Dkt. # 3).)  Defendants

18  removed the action to this court.  (Not. of Rem. (Dkt. # 1).)  Plaintiffs then filed an

19  amended complaint.  (*See* Am. Compl.)  The amended complaint did not include a LUPA

20  claim.  (*See id.*)  It did, however, allege claims under the Fair Housing Act ("FHA"), 42

21  U.S.C. § 3601 *et seq.*, Religious Freedom Restoration Act ("RFRA"), 42 U.S.C.

22  § 2000bb *et seq.*, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42

1  U.S.C. § 2000cc *et seq.*, the Washington Constitution, and 42 U.S.C. § 1983.  (*See* Am.

2  Compl.)  The basis for these claims is Plaintiffs' contention that the City selectively

3  enforces its zoning ordinance against Plaintiffs on the basis of their religion.  (*See*

4  *generally* Am. Compl.)

5       Defendants brought a motion to dismiss Plaintiffs' amended complaint for lack of

6  subject matter jurisdiction and for failure to state a claim.  (*See* Mot.)  Defendants'

7  motion is now before the court.

**III.    ANALYSIS**

**A.    Motion to Dismiss Standard**

10       Defendants move to dismiss under Federal Rule of Civil Procedure12(b)(1) and

11  12(b)(6).  The court may dismiss a claim under Rule 12(b)(1) for lack of subject matter

12  jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  The burden of establishing subject matter

13  jurisdiction rests upon the party asserting jurisdiction.  *Kokkonen v. Guardian Life Ins.*

14  *Co. of Am.*, 511 U.S. 375, 377 (1994).  A motion to dismiss for lack of subject matter

15  jurisdiction can be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

16  (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in

17  a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  This

18  "confin[es] the inquiry to allegations in the complaint."  *Savage v. Glendale Union High*

19  *Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).  By

20  contrast, "in a factual attack, the challenger disputes the truth of the allegations that, by

21  themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373

22  F.3d at 1039.  When considering a factual attack, the district court is not restricted to the

1   face of the pleadings, but may review any evidence, including affidavits and testimony,

2   without converting the motion into one for summary judgment.  *McCarty v. United*

3   *States*, 850 F.2d 558, 560 (9th Cir. 1988).

4          Under Rule 12(b)(6), a court must dismiss a complaint if it fails to state a claim

5   upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In determining whether to

6   grant a Rule 12(b)(6) motion, the court must accept as true all "well-pleaded factual

7   allegations" in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Dismissal for

8   failure to state a claim "is proper if there is a lack of a cognizable legal theory or the

9   absence of sufficient facts alleged under a cognizable legal theory."  *Conservation Force*

10  *v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011).

11         To survive a motion to dismiss, a complaint's "[f]actual allegations must be

12  enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*,

13  550 U.S. 544, 555 (2007).  The complaint must contain "sufficient factual matter,

14  accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at

15  663 (internal quotation marks omitted); *see also Telesaurus VPC, LLC v. Power*, 623

16  F.3d 998, 1003 (9th Cir. 2010).  The court must accept all well-pleaded allegations of

17  material fact as true and draw all reasonable inferences in favor of the plaintiff.  *United*

18  *States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The court, however, is not bound to

19  accept as true labels, conclusions, formulaic recitations of the elements, or legal

20  conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555 (citing *Papasan v.*

21  *Allain*, 478 U.S. 265, 286 (1986)).  As the Supreme Court said in *Iqbal*, a complaint must

22

1   do more than tender "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*,

2   556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

3       When ruling on a motion to dismiss under Rule 12(b)(6), a court may consider

4   only the pleadings, documents attached to or incorporated by reference in the pleadings,

5   and matters of judicial notice. *Ritchie*, 342 F.3d at 907.  If the court considers additional

6   evidence outside those categories, it must normally convert the motion to dismiss into a

7   Rule 56 motion for summary judgment and give the opposing party an opportunity to

8   respond. *Id.* (citing Fed. R. Civ. P. 12(b).)

9   **B.    Additional Evidence**

10      Here, Defendants raise a facial challenge to the court's subject matter jurisdiction.

11  (*See* Mot.)  Defendants' motion to dismiss properly relies only on the pleadings and

12  documents attached to or incorporated by reference in the pleadings.[2]  (*See* Mot.)

13  Plaintiffs, however, attach 18 exhibits of additional evidence to their response, seek to

14  "incorporate by reference" the facts stated in three of their previous filings, and request

15  that the court convert the motion to dismiss to a motion for summary judgment.  (*See*

16  Resp. at 1; Link Decl. (Dkt. # 37) ¶ 2.)  Plaintiffs may not unilaterally transform

17  Defendants' motion to dismiss into a motion for summary judgment.  It is neither

18
19      [2] Plaintiffs attached the Hearing Examiner's two decisions as exhibits to the original complaint.
    (*See* Compl.).  In their amended complaint, Plaintiffs refer to those to those exhibits as support for their
    allegations and aver that the exhibits "are true and correct copies of the Hearing Examiner's Decisions."
20  (Am. Compl. ¶ 3.28.)  Defendants do not question the authenticity of these documents.  (*See* Mot.
    (referring to and attaching the Hearing Examiner decisions).)  Therefore, the court finds that these
    decisions have been incorporated by reference in the amended complaint and are appropriate for
21  consideration on a motion to dismiss.  *See Ritchie*, 342 F.3d at 907; *Branch v. Tunnell*, 14 F.3d 449, 454
    (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th
22  Cir. 2002) (stating that a court may consider "documents whose contents are alleged in the complaint and
    whose authenticity no party questions, but which are not physically attached to the pleading").

1    appropriate nor sufficient for Plaintiffs to respond to a motion challenging the sufficiency

2    of their pleadings by discussing the extrinsic evidence that supports their claims.

3    Accordingly, the court STRIKES Plaintiffs' exhibits that were not attached to or

4    incorporated by reference in the complaint, namely, the documents at Docket Nos. 1-8,

5    11-15, 18.  The court does not consider any of that evidence—or any of the other

6    documents that Plaintiffs attempt to "incorporate by reference" in their response—in

7    ruling on Defendants' motion to dismiss.

8           Additionally, the court denies Plaintiffs' alternative request for the court to take

9    judicial notice of its exhibits.  (*See* Link Decl. ¶ 2.)  "Judicial notice is reserved for

10   matters 'generally known within the territorial jurisdiction of the trial court' or 'capable

11   of accurate and ready determination by resort to sources whose accuracy cannot

12   reasonably be questioned.'"  *Jespersen v. Harrah's Operating Co., Inc.*, 444 F.3d 1104,

13   1110 (9th Cir.2006) (en banc) (quoting Fed. R. Evid. 201).  A "high degree of

14   indisputability" is generally required to justify judicial notice.  *Id.* (quoting Fed. R. Evid.

15   201 advisory committee's note).  Moreover, judicial notice is only appropriate for

16   "adjudicative facts" that are "not subject to reasonable dispute."  Fed. R. Evid. 201(a),(b).

17   Plaintiffs have made no effort to show that this standard is met.  (*See generally* Resp.;

18   Link Decl.)  The court finds that Plaintiffs' numerous exhibits, which include transcripts,

19   emails, reports, letters, and print-outs of internet websites, are not appropriate subjects for

20   judicial notice.  Therefore, Plaintiffs' request is denied.  The court will not consider those

21   exhibits in ruling on Defendants' motion to dismiss.

22   *//*

1    **C.    LUPA**

2        Washington's Land Use Petition Act ("LUPA"), RCW 36.07C.005 *et seq.*, is the

3    exclusive means by which a party can obtain judicial review of a local land use decision.

4    *See Durland v. San Juan Cnty.*, 340 P.3d 191, 196 (Wash. 2014); RCW 36.70C.030.  A

5    land use decision is any "final determination by a local jurisdiction's body or officer"

6    regarding enumerated land use issues, including, as relevant here, "enforcement by a

7    local jurisdiction[3] of ordinances regulating the improvement, development, modification,

8    maintenance, or use of real property."  RCW 36.07C.020(2) (footnote added).  LUPA

9    establishes the scope of discovery, pleading requirements, burdens of proof, deadlines,

10   and other substantive and procedural rules applicable to judicial review of a land use

11   petition.  *See* RCW 36.07C.70-120.  A Washington Superior court hearing a LUPA

12   petition may grant relief only if the petitioner proves one of following standards:  (1) the

13   local agency used an unlawful process or failed to follow a prescribed process; (2) the

14   decision is an erroneous interpretation of the law; (3) the decision is not supported by

15   substantial evidence; (4) the decision is a clearly erroneous application of the law to the

16   facts; (5) the agency exceeded its authority or jurisdiction; or (6) the decision violates the

17   constitutional rights of the party seeking relief.  RCW 36.70C.130.

18       LUPA was enacted for the purpose of establishing uniform and expedited judicial

19   review of local land use decisions.  *Twin Bridge Marine Park, L.L.C. v. State, Dep't of*

20   *Ecology*, 175 P.3d 1050, 1059 (Wash. 2008).  LUPA provides that a land use petition is

21

22   _____

     [3] A local jurisdiction is a city, county, or incorporated town.  RCW 36.07C.020(3).

barred, and a court may not grant review, unless the petition is filed within 21 days of the date of the issuance of the land use decision.  RCW 36.70C.040.  In accordance with that provision, Washington state courts have consistently held that a land use decision becomes final, and is therefore unreviewable by courts, if the aggrieved party fails to appeal within LUPA's 21-day deadline.  *See, e.g.*, *Habitat Watch v. Skagit Cnty.*, 120 P.3d 56, 60-61 (Wash. 2005) ("[E]ven illegal decisions must be challenged in a timely, appropriate manner."); *Twin Bridge Marine Park*, 175 P.3d at 1059.

There is no dispute that Plaintiffs' challenge to the City's enforcement of zoning ordinances falls within LUPA's scope.  *See* RCW 36.07C.020(2).  Although Plaintiffs originally timely filed a LUPA petition in Washington superior court (*see* Compl. ¶¶ 4.1-4.13), their amended complaint does not contain a LUPA claim (*see* Am. Compl.).  Defendants raise several different arguments as to the preclusive effect of Plaintiffs' choice to forego their LUPA appeal.

### 1. *Rooker-Feldman* Doctrine

First, Defendant contends that the *Rooker-Feldman* doctrine bars this court from hearing claims that require reconsideration of the Hearing Examiner's decision.  (Mot. at 6-8.)  Under the *Rooker-Feldman* doctrine, a federal district court "must refuse to hear a de facto appeal" of a state court judgment and "must also refuse to decide any issue . . . that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision."  *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003).  In short, "the *Rooker-Feldman* doctrine bars suits 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

1    inviting district court review and rejection of those judgments.'" *Carmona v. Carmona*,

2    603 F.3d 1041, 1050 (9th Cir. 2008) (quoting *Exxon Mobil Corp. v. Saudi Basic Industr.*

3    *Corp.*, 544 U.S. 280, 284 (2005)).  This doctrine, however, applies only to state court

4    judgments; it "has no application to judicial review of executive action, including

5    determinations made by a state administrative agency."  *Verizon Maryland, Inc. v. Pub.*

6    *Serv. Comm'n of Maryland*, 535 U.S. 635, 644 (2002); *see also Noel*, 341 F.3d at 1159;

7    *S. Calif. Edison Co. v. Lynch*, 307 F.3d 794, 805 (9th Cir.) *modified*, 307 F.3d 943 (9th

8    Cir. 2002) *and certified question answered sub nom. S. Calif. Edison Co. v. Peevey*, 31

9    Cal. 4th 781, 74 P.3d 795 (Cal. 2003) ("The *Rooker–Feldman* doctrine does not apply to

10   the actions of the Commission because it is a state administrative agency, not a court.")

11        Here, the City's enforcement decision is a determination made by a state

12   administrative agency.  (*See* Smokey Hearing, 61st Hearing; MMC 22G.060.090

13   (establishing the Hearing Examiner's duties and authority)).  Therefore the *Rooker-*

14   *Feldman* doctrine is inapplicable.  *See Verizon Maryland*, 535 U.S. at 644.  The fact that,

15   under Washington law, a land use decision is deemed final and unreviewable by courts in

16   the absence of a LUPA appeal, *see Twin Bridge Marine Park*, 175 P.3d at 1059, does not

17   change the calculation.  "The *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C.

18   § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise

19   appellate jurisdiction over state-court judgments, which Congress has reserved to [the

20   Supreme] Court, *see* 28 U.S.C. § 1257(a)."  *Verizon Maryland*, 535 U.S. at 644.  These

21   concerns are not implicated by judicial review of state administrative actions.  *See id.*  As

22   //

1   such, the doctrine has no applicability here.  The court denies Defendants' motion to

2   dismiss for lack of subject matter jurisdiction.

3        **2.  Federal Causes of Action**

4        Defendants next appear to contend that, because LUPA is the exclusive means for

5   obtaining review of local land use decisions in Washington courts, Plaintiffs' failure to

6   bring a timely LUPA appeal prevents them from bringing other state and federal claims

7   challenging or concerning the hearing examiner's decision.  (Mot. at 22-24.)  It is true

8   that some Washington courts have found that the failure to meet LUPA's filing deadline

9   also bars a party from collaterally challenging the land use decision via different causes

10  of action, including claims brought under 42 U.S.C. § 1983 ("Section 1983").  *See Asche*

11  *v. Bloomquist*, 133 P.3d 475, 483 (Wash. Ct. App. 2006), *as amended* (Apr. 4, 2006);

12  *Mercer Island Citizens for Fair Process v. Tent City 4*, 232 P.3d 1163, 1168 (Wash. Ct.

13  App. 2010).  The Washington Supreme Court, however, has expressly declined to decide

14  "whether LUPA's procedural requirements apply to bar a related § 1983 claim."  *Durland*

15  *v. San Juan Cnty.*, 340 P.3d 191, 206 (Wash. 2014).

16       The court finds that a failure to file a timely LUPA petition does not bar federal

17  claims challenging a local land use decision from proceeding in federal court.[4]  Federal

18  law is the "supreme Law of the Land."  U.S. Const. Art. VI, § 2.  Under the Supremacy

19  Clause, "any state law, however clearly within a State's acknowledged power, which

20  interferes with or is contrary to federal law, must yield.'"  *Felder v. Casey,* 487 U.S. 131,

21  

22     [4] The court does not discuss the LUPA's effect on state law claims because Defendants do not move to dismiss Plaintiffs' claim under the Washington constitution (*see* Mot. at 29-20).

ORDER- 13

1   138 (1988).  The federal statute of limitations for RLUIPA claims is 4 years, and the

2   federal statute of limitations for FHA claims is 2 years.  *See Pouncil v. Tilton*, 704 F.3d

3   568, 573 (9th Cir. 2012) (*citing Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382

4   645 (2004)); *Garcia v. Brockway*, 526 F.3d 456, 461 (9th Cir. 2008).  Applying LUPA to

5   foreclose RLUIPA and FHA claims brought in federal court after 21 days would interfere

6   with or be contrary to federal law.  *See Harding v. Galceran*, 889 F.2d 906, 908 (9th Cir.

7   1989) (finding that a state law that prohibited civil rights claims pending resolution of

8   criminal charges against a party was contrary to the purposes of federal civil rights law

9   and therefore violated the Supremacy Clause).  "A statute, of course, is to be construed, if

10  such a construction is fairly possible, to avoid raising doubts of its constitutionality."  *St.*

11  *Martin Evangelical Lutheran Church v. S. Dakota*, 451 U.S. 772, 780 (1981).  The court

12  notes that federal statutes such as RLUIPA and FHA are not included in the standards

13  upon which a Washington court reviewing a LUPA petition can base a ruling.  *See* RCW

14  36.70C.130.  Accordingly, the court finds it is fair to construe LUPA's filing deadline as

15  neither reaching nor otherwise precluding Plaintiffs' RLUIPA and FHA claims.  *See, e.g.*,

16  *Johnson v. City of Chico*, 725 F. Supp. 1097, 1103 (E.D. Cal. 1989) (construing a state

17  law to exclude federal claims from the law's automatic stay provision because "a state

18  legislature may not, consistent with the Supremacy Clause, restrict the jurisdiction of this

19  court to hear a claim predicated on federal law").

20      When adjudicating claims under Section 1983, federal courts borrow the most

21  analogous state statute of limitation.  *Owens v. Okure*, 488 U.S. 235, 239 (1989).  "Any

22  assessment of the applicability of a state law to federal civil rights litigation, [however],

1    must be made in light of the purpose and nature of the federal right." *Felder*, 487 U.S. at

2    138.  "[T]he central objective of the Reconstruction-Era civil rights statutes [such as

3    Section 1983] is to ensure that individuals whose federal constitutional or statutory rights

4    are abridged may recover damages or secure injunctive relief." *Id.* (citing *Burnett v.*

5    *Grattan*, 468 U.S. 42, 54 (1984)). Accordingly, the Supreme Court has "disapproved the

6    adoption of state statutes of limitation that provide only a truncated period of time within

7    which to file suit, because such statutes inadequately accommodate the complexities of

8    federal civil rights litigation and are thus inconsistent with Congress' compensatory

9    aims." *Id.* (citing *Burnett*, 468 U.S. at 51 (declining to apply a six-month statute of

10   limitations to a Section 1983 claim).  For similar reasons, the Ninth Circuit has declined

11   to apply other types of state jurisdictional requirements to Section 1983 claims. *See, e.g.*,

12   *Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989) (declining to apply Washington's

13   notice of claim statute to Section 1983 claims); *Botefur v. City of Eagle Point, Or.*, 7 F.3d

14   152, 156 (9th Cir. 1993) (declining to apply a state tender-back rule to Section 1983

15   claims).  The court finds that LUPA's 21-day filing deadline is inconsistent in both

16   purpose and effect with the remedial objectives of Section 1983. *See Burnett*, 468 U.S. at

17   51; *Felder*, 487 U.S. at 138.  The court declines to apply this deadline as a de facto statute

18   of limitations.

19        Furthermore, the court agrees with the only other federal court who has addressed

20   this matter that, in light of the Supremacy Clause, a failure to comply with LUPA's

21   deadline does not bar a Section 1983 claim in federal court. *See Muffett v. City of*

22   *Yakima*, No. CV-10-3092-RMP, 2011 WL 5417158, at *4 (E.D. Wash. Nov. 9, 2011)

1   ("In light of the supremacy of federal law, a state legislative act cannot modify § 1983

2   and impose an exhaustion requirement") (citing *Patsy v. Bd. of Regents of State of Fla.*,

3   457 U.S. 496, 516 (1982) (holding that exhaustion of state court remedies is not a

4   prerequisite to bringing Section 1983 claims).  Accordingly, the court construes LUPA's

5   21-day deadline to not otherwise bar federal constitutional claims brought under Section

6   1983 in federal court.  *See St. Martin Evangelical Lutheran Church*, 451 U.S. at 780.

7   Therefore, none of Plaintiffs' federal statutory or constitutional claims are barred by

8   Plaintiffs' failure to fail a timely LUPA petition.

9       **3.  Administrative Issue Preclusion**

10      Defendants next argue that, even if LUPA does not bar Plaintiffs' claims outright,

11  the Hearing Examiner's determination that the Macks were in violation of Marysville

12  zoning ordinances is entitled to preclusive effect.  (Mot. at 26-27.)  The doctrine of issue

13  preclusion prevents parties from litigating the same issues twice.  *In re Jacobson*, 676

14  F.3d 1193, 1201 (9th Cir. 2012).  In general, "when a state agency 'acting in a judicial

15  capacity . . . resolves disputed issues of fact properly before it which the parties have had

16  an adequate opportunity to litigate,' . . . federal courts must give the agency's factfinding

17  the same preclusive effect to which it would be entitled in the State's courts."  *Univ. of

18  Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) (quoting *United States v. Utah Const. &*

19  *Min. Co.*, 384 U.S. 394, 422 (1966)).  The Ninth Circuit has "held that the same principle

20  applies to legal as well as factual findings of an administrative body."  *Wehrli v. Cnty. of*

21  *Orange*, 175 F.3d 692, 694 (9th Cir. 1999) (citing *Miller v. Cnty. of Santa Cruz,* 39 F.3d

22  1030, 1032-33 (9th Cir. 1994)).

1   This general rule, however, is not absolute:  the applicability of issue preclusion to

2   federal statutory claims turns on "whether a common-law rule of preclusion would be

3   consistent with Congress' intent in enacting [the statute]." *Elliott*, 478 U.S. at 799.

4   Because "Congress is understood to legislate against a background of common-law

5   adjudicatory principles," courts presume that issue preclusion applies to federal statutory

6   claims unless "a statutory purpose to the contrary is evident." *Astoria Fed. Sav. & Loan*

7   *Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) (finding that applying administrative issue

8   preclusion to claims under the Americans Discrimination in Employment Act was

9   inconsistent with the Act's administrative exhaustion requirement); *Elliott*, 478 U.S. at

10  799 (finding that administrative issue preclusion was inapplicable to claims under Title

11  VII of the Civil Rights Act of 1964).  Although Congress need not "state precisely any

12  intention to overcome the presumption's application to a statutory scheme," *Astoria Fed.*

13  *Sav. & Loan Ass'n*, 501 U.S. at 108, "[i]n order to abrogate a common-law principle, the

14  statute must [at least] 'speak directly' to the question addressed by the common law,"

15  *United States v. Texas*, 507 U.S. 529, 534 (1993).

16          With respect to the claims raised in this action, "[t]here is no doubt that . . . a state

17  administrative decision can have preclusive effect upon a federal § 1983 claim." *Wehrli*,

18  175 F.3d at 694.  It does not appear, however, that federal appellate courts have

19  addressed whether a state administrative decision can have preclusive effect on FHA or

20  RLUIPA claims.  The court notes that district courts have disagreed whether a

21  Congressional purpose to eliminate issue preclusion is evident in the FHA.  *Compare*

22  *United States v. E. River Hous. Corp.*, No. 13 CIV. 8650 ER, 2015 WL 872160, at *19

1    (S.D.N.Y. Mar. 2, 2015) (finding that a state agency's adverse determination on a FHA

2    claim referred by the Department of Housing and Urban Development did not prevent the

3    United States from suing on the same FHA claim) *with Ward v. Harte,* 794 F. Supp. 109,

4    113 (S.D.N.Y. 1992) (finding that issue preclusion was appropriate for FHA claims that

5    did not require exhaustion of administrative remedies).  Additionally, the court notes that

6    the single district court that appears to have addressed administrative issue preclusion in

7    the RLUIPA context found that it was "improper to give preclusive effect to the factual

8    findings and legal conclusions of an administrative proceeding in a RLUIPA action

9    where the alleged discriminatory act arises from the administrative proceeding itself."

10   *Congregation Etz Chaim v. City of L.A.*, No. CV 10-1587 CAS EX, 2011 WL 12462883,

11   at *8 (C.D. Cal. Jan. 6, 2011).

12          The parties, however, have not addressed whether administrative preclusion is

13   applicable to FHA and RLUIPA claims.  In fact, neither party applied the appropriate

14   standard for determining administrative issue preclusion in their briefing, or even cited to

15   Ninth Circuit case law on the issue.  (*See* Mot.; Resp.); *see, e.g.*, *Wehrli*, 175 F.3d at 694;

16   *Miller*, 39 F.3d at 1032-33.  Although the parties attempted to address the Washington

17   standard for issue preclusion in general, they neglected to address the Washington

18   standard for issue preclusion of agency decisions.[5]  *See Elliott*, 478 U.S. at 799

19   _____

20       [5] In general, Washington courts apply a four-part test to determine whether issue preclusion
     applies.  *Christensen v. Grant Cnty. Hosp. Dist. No. 1*, 96 P.3d 957, 961 (Wash. 2004).  The party seeking
21   preclusion must demonstrate that (1) the identical issue was decided in a prior adjudication, (2) the prior
     adjudication resulted in a final judgment on the merits, (3) collateral estoppel is asserted against the same
     party or a party in privity with the same party to the prior adjudication, and (4) precluding relitigation of
22   the issue will not work an injustice.  *Id.*  In order to apply issue preclusion to administrative agency

1    ("[F]ederal courts must give the agency's factfinding the same preclusive effect to which

2    it would be entitled in the State's courts.")

3          As a result, the court is left with inadequate information to rule on this issue.  For

4    example, it is not evident from the face of the amended complaint (except for what

5    information can be gleaned from the attached Hearing Examiner's decisions) what

6    process was followed before and during the Plaintiffs' hearings, let alone whether that

7    process was adequate.  *See Elliott*, 478 U.S. at 799.  Defendants' discussion of the matter

8    contains no citations, and Plaintiffs, for their part, complain that the process was

9    inadequate.  (*See* Mot. at 28; Am. Compl. ¶ 8.4; Resp. at 24.)  It is also unclear—and no

10   party has addressed—whether Holy Ghost Church is in privity with the Macks, such that

11   the adverse enforcement decision against the Macks should be asserted against Holy

12   Ghost in these proceedings.  *See United States v. Deaconess Med. Ctr. Empire Health*

13   *Serv.*, 994 P.2d 830, 833 (Wash. 2000), *as amended* (Mar. 23, 2000) ("Privity does not

14   arise from the mere fact that persons as litigants are interested in the same question or in

15   proving or disproving the same state of facts.").

16          More important, contrary to Defendants' contention, a decision on issue preclusion

17   is not dispositive of the motion to dismiss.  (*See* Mot. at 27.)  Even if issue preclusion

18   applies, it will foreclose Plaintiffs from relitigating only the issues actually decided by the

19   Hearing Examiner, namely, whether Plaintiffs were in violation of the City's zoning

20

21   decisions, three additional factors must be considered:  "(1) whether the agency acted within its
     competence, (2) the differences between procedures in the administrative proceeding and court
     procedures, and (3) public policy considerations."  *Id.* at 61-62; *see also Reninger v. State Dep't of Corr.*,

22   951 P.2d 782, 789 (Wash. 1998).

1   ordinances.  After all, Plaintiffs did not raise federal statutory or constitutional claims

2   before the Hearing Examiner.  Moreover, although Plaintiffs allege that the Hearing

3   Examiner's decision was incorrect, Plaintiffs' also allege a claim for selective

4   enforcement—that the City enforced the zoning ordinances against them based on

5   Plaintiffs' religion and handicaps.  Plaintiffs' selective enforcement claim survives

6   regardless of whether the Hearing Examiner's underlying decision is correct or may be

7   re-litigated.

8         For all of these reasons, the court determines that adjudication of the issue of

9   administrative issue preclusion at this stage of the case, and with only a limited

10   understanding of the relevant facts, is inadvisable.   Therefore, at this time, the court

11   denies Defendants' motion to dismiss based on administrative issue preclusion without

12   prejudice to raising the issue again in an appropriately manner.

13   **D.    RFRA**

14         In *City of Boerne v. Flores*, the Supreme Court invalidated RFRA as applied to

15   state and municipal law.  521 U.S. 507, 516 (1997); *see also Burwell v. Hobby Lobby*

16   *Stores, Inc.*, ---U.S.---, 134 S. Ct. 2751 (2014); *Guam v. Guerrero*, 290 F.3d 1210, 1219

17   (9th Cir. 2002).  Plaintiffs' RFRA claims are predicated on municipal law, namely, the

18   City's enforcement of its local zoning ordinances.  (*See generally* Am. Compl.)  As such,

19   under *City of Boerne*, Plaintiffs' RFRA claims are not viable.  *See* 521 U.S. at 516.

20   Plaintiffs appear to concede the point:  their response brief omits any discussion of

21   RFRA.  Accordingly, the court dismisses Plaintiffs' RFRA claim.

22   *//*

1    "In general, a court should liberally allow a party to amend its pleading."  *Sonoma*

2    *Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013); *see*

3    *Fed.* R. Civ. P. 15(a).  Dismissal without leave to amend is proper, however, if any

4    amendment would be futile.  *Id*.  It is clear that no amendment can save Plaintiffs' RFRA

5    claim.  Therefore, the court dismisses the claim without leave to amend.

6    **E.    FHA**

7          The FHA prohibits discrimination in housing practices on the basis of various

8    classifications, including race, color, religion, and handicap.  *See* 42 U.S.C. § 3604.

9    Persons recovering from a drug or alcohol addiction are considered handicapped for the

10   purposes of the FHA.  *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142,

11   1156-57 (9th Cir. 2013).  In the context of handicaps, FHA defines "discrimination" to

12   include "a refusal to make reasonable accommodations in rules, policies, practices, or

13   services, when such accommodations may be necessary to afford [a handicapped] person

14   equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).  Accordingly,

15   a handicapped person can bring three types of discrimination claims under the FHA:

16   disparate impact, disparate treatment, and refusal to make reasonable accommodations.

17   *See* 42 U.S. Code § 3604(f); *McDonald v. Coldwell Banker*, 543 F.3d 498, 509 (9th Cir.

18   2008); *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179

19   (9th Cir. 2006).

20         Plaintiffs' amended complaint raises only one of the three possible claims:  a

21   claim for the refusal to make reasonable accommodations.  (*See* Am. Compl. ¶¶ 5.4-5.5.)

22   *//*

1   The FHA's reasonable accommodations provision applies to zoning ordinances. *McGary*

2   *v. City of Portland*, 386 F.3d 1259, 1264 (9th Cir. 2004).  To prevail on a claim for

3   refusal to make reasonable accommodations, a plaintiff must prove "(1) that the plaintiff

4   or his associate is handicapped within the meaning of [the FHA]; (2) that the defendant

5   knew or should reasonably be expected to know of the handicap; (3) that accommodation

6   of the handicap may be necessary to afford the handicapped person an equal opportunity

7   to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that

8   defendant refused to make the requested accommodation." *DuBois*, 453 F.3d at 1179.

9          Plaintiffs' amended complaint fails to state a claim for refusal to provide

10   reasonable accommodations.  Plaintiffs' claim that the "City of Marysville violated the

11   FHA when it refused to make a reasonable accommodation to Holy Ghost Revival

12   Ministries regarding the Smokey Point Property . . . .")  (Am. Compl. ¶¶ 5.3, 5.5.)  In

13   support of that claim, Plaintiffs allege that (1) the Mack Houses minister to released

14   convicts, some of whom are recovering from substance abuse; (2) upon receiving the

15   enforcement order for Smokey Point, Mr. Mack submitted a "revised floor plan with a

16   predominant office use" to the City via email; (3) when City did not respond, he sent a

17   "Reasonable Accommodation Request" to the City, and (4) Plaintiffs were required to

18   renovate the Smokey Point property in order to comply with the Hearing Examiner's

19   decision enforcing the zoning ordinance.  (*Id.* ¶¶ 1.4, 3.23-3.26, 3.31, Ex. 6.)  Read

20   //

21   //

22   //

ORDER- 22

1    generously, these allegations satisfy the first, second,[6] and fifth elements of a claim for

2    refusal to provide reasonable accommodations.  *See DuBois*, 453 F.3d at 1179.

3         The amended complaint, however, contains no allegations showing what the

4    proposed accommodation was, let alone whether it was reasonable.  *See Roman v.*

5    *Jefferson at Hollywood LP*, 495 F. App'x 804, 805 (9th Cir. 2012) (affirming dismissal of

6    FHA claims because the plaintiff "also failed to allege anything showing that his second

7    requested accommodation . . .  was reasonable or even possible."); *Giebeler v. M & B*

8    *Assocs.,* 343 F.3d 1143, 1156 (9th Cir. 2003) (holding that a plaintiff alleging FHA

9    reasonable accommodation discrimination has the burden to show reasonableness or

10   possibility of accommodations).  Neither does the complaint contain allegations showing

11   that Smokey Point residents' alleged handicap deprived them of an opportunity to use

12   dwellings in areas zoned General Commercial (or otherwise) that non-handicapped

13   people enjoyed, or, put differently, that an accommodation was necessary in order to

14   place the handicapped residents seeking to live in areas zoned General Commercial (or

15   otherwise) on equal footing with non-handicapped residents seeking the same thing.

16   *Roman*, 495 F. App'x at 805 (upholding dismissal of FHA claim because the plaintiff

17   failed to allege that the accommodation was necessary); *Cinnamon Hills Youth Crisis*

18   *Ctr., Inc. v. Saint George City*, 685 F.3d 917, 923 (10th Cir. 2012) ("But when there is no

19   comparable housing opportunity for non-disabled people, the failure to create an

20   ――――――――――――――――――

21   [6] Although the amended complaint does not allege that the City was aware of the Smokey Point
     residents' alleged handicaps, the emails attached to the amended complaint at Exhibit 2 show that the City
22   employees were aware of the Macks' claim that they provide housing to recovering substance abusers.
     (*See* Am. Compl. Ex. 2.)

1  opportunity for disabled people cannot be called necessary to achieve equality of

2  opportunity in any sense.  So, for example, a city need not allow the construction of a

3  group home for the disabled in a commercial area where nobody, disabled or otherwise,

4  is allowed to live.").  As such, even accepting all of Plaintiffs' well-pleaded allegations as

5  true, there is an absence of sufficient facts alleged to support the third and fourth

6  elements of a FHA claim for refusal to provide reasonable accommodations.  *See DuBois*,

7  453 F.3d at 1179.  Therefore, the court dismisses this claim.  *See Conservation Force*,

8  646 F.3d at 1242.

9       Plaintiffs' devote their response to arguing that extrinsic evidence shows they have

10  viable disparate treatment FHA claims on the basis of handicap and religion.  (*See* Resp.

11  at 13-17.)  These claims, however, are not pleaded in their complaint, and the court may

12  not consider extrinsic evidence on a motion to dismiss.  *See Ritchie*, 342 F.3d at 907.

13       Specifically, with respect to a handicap disparate treatment claim, the amended

14  complaint cites only to 42 U.S.C. § 3604(f)(3)(B), which concerns the reasonable

15  accommodation requirement.  Moreover, the amended complaint does not address the

16  disparate treatment standard with respect to handicapped persons.  (*See* Am. Compl.

17  ¶ 5.3.)  Specifically, a disparate treatment claim requires some showing of discriminatory

18  intent on the part of the defendants.  *McDonald*, 543 F.3d at 509.  A plaintiff may show

19  discriminatory intent either by (1) demonstrating the existence of a similarly situated

20  entity who was treated better than the plaintiffs, or (2) producing direct or circumstantial

21  evidence that a discriminatory reason more likely than not motivated the defendant and

22  the defendant's actions adversely affected the plaintiff in some way.  *See Pac. Shores*

1  *Props., LLC*, 730 F.3d at 1158.  The amended complaint, however, only alleges the

2  City's discriminatory intent with respect to Plaintiffs' religion—it does not allege any

3  facts tending to show under either of the two prongs identified above that the City was

4  motivated to discriminate against Plaintiffs on the basis of their members' alleged

5  handicaps.  (*See generally* Am. Compl.)  For these reasons, Plaintiffs have not stated a

6  disparate treatment FHA claim on the basis of handicap.

7        Second, the complaint only alleges discrimination under the FHA on the basis of

8  handicap, and does not cite to 42 U.S.C. § 3604(a) or (b), which are the subsections

9  prohibiting discrimination based on religion. (*See* Am. Compl. ¶¶ 5.3-5.5.)  Therefore,

10  Plaintiffs' complaint fails to state a disparate treatment FHA claim on the basis of

11  religion.  For these reasons also, the court dismisses Plaintiffs' FHA claim.  However,

12  because amendment could potentially cure this claim, the court grants leave to amend.

13  *See Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1117.

14  **F.    RLUIPA**

15        RLUIPA has four separate provisions limiting government regulation of land use:

16  (1) the substantial burden provision, (2) the equal terms provision, (3) the

17  nondiscrimination provision, and (4) the exclusions provision.  42 U.S.C. § 2000cc(b);

18  *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1169 (9th Cir.

19  2011).  Although the amended complaint cites all four provisions, Defendants and

20  Plaintiffs only address the first two provisions in their briefing.  (*See* Mot. at 15-18; Resp.

21  at 19.)  Therefore, the court focuses on those provisions.

22  //

### 1.  Substantial Burden

The substantial burden provision of RLUIPA prohibits governments from implementing land use regulations in a manner that imposes "a substantial burden" on the religious exercise of a religious assembly or institution unless the government demonstrates that the implementation is the "least restrictive means" to further a "compelling governmental interest."  42 U.S.C.A. § 2000cc(a)(1); *Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 985-86 (9th Cir. 2006).  "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," and includes the "use, building, or conversion of real property for the purpose of religious exercise."  42 U.S.C.A. § 2000cc-5(7).

Plaintiffs bring a RLUIPA claim based only on the City's enforcement order regarding the Smokey Point Property.  (*See* Am. Compl. ¶ 7.4.)  Plaintiffs allege that, "as part of its religious mission, Holy Ghost Church ministers to individuals residing at Mack Houses," and that "its religious beliefs and mission . . . are intrinsically interwoven."  (*Id.* ¶¶ 3.2, 3.9.)  Defendants do not dispute that the amended complaint adequately alleges that the City's implementation of its zoning ordinance implicates Plaintiffs' religious exercise as defined under RLUIPA.  Rather, Defendants argue that the amended complaint does not adequately plead a "substantial burden" on Plaintiffs' religious exercise.  (Mot. at 15-17.)

A substantial burden "must place more than inconvenience on religious exercise."  *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (quoting *Guru Nanak Sikh Soc. of Yuba City*, 456 F.3d at 988).  That is, "a

'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Id.* (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)).  The burden must be "oppressive to a significantly great extent." *Id.* (quoting *San Jose Christian Coll.*, 360 F.3d at 1034).  Therefore, a substantial burden exists where the governmental authority puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Guru Nanak*, 456 F.3d at 988 (quoting *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.*, 450 U.S. 707, 717-18 (1981)).

Plaintiffs allege that (1) as a result of the enforcement action "Holy Ghost Church had to shut down the Mack House for a period of time" (Am. Compl. ¶ 3.31), (2) during that time Holy Ghost Church "was able to provide housing for some of the individuals who were residing at the Smokey Point Property, but others were displaced" (*id.* ¶ 3.31), and (3) Holy Ghost Church has since "renovated the Smokey Point Property to comply with the [Hearing Examiner's] Decision, and subsequently provided housing to certain individuals" (*id.* ¶ 3.33).  Plaintiffs, however, fail to explain how many "certain individuals" they are now able to provide with housing at the Smokey Point Property, or what the alleged renovations entailed.  (*See generally* Compl.)

There are a total of ten Mack Houses located in Snohomish County, six of which are located in Marysville.  (Am. Compl. ¶ 3.8.)  The Ninth Circuit has declined to find a substantial burden due to zoning violations when other sites remain available for a religious institution to use.  *Compare San Jose Christian Coll.*, 360 F.3d at 1035 (holding that the requirement that a religious institution comply with re-zoning application process

1  did not constitute a substantial burden because "there is no evidence in the record

2  demonstrating that [the institution] was precluded from using other sites within the city"

3  and the "cost and procedural requirements" of the process were merely "ordinary

4  difficulties associated with location . . . in a large city") *with Int'l Church of Foursquare*

5  *Gospel*, 673 F.3d at 1067 (finding a substantial burden could exist where there was

6  testimony that "no other suitable sites exist[ed] in the City to house the Church's

7  expanded operations").  Therefore, the mere fact Plaintiffs had to renovate one of the ten

8  houses in some unknown fashion in order to continue housing residents at that location is

9  not a burden that is "oppressive to a significantly great extent."  *Id.* (quoting *San Jose*

10 *Christian Coll.*, 360 F.3d at 1034).

11        The court notes that Plaintiffs have generally alleged that (1) there is a "shortage

12 of housing in Washington for those persons who seek housing through the Holy Ghost

13 Church" (Am. Compl. ¶ 3.4), and that (2) the City has "embarked on a 'behind the

14 scenes' plan to prevent the expansion of Mack Houses in the City" (*id.* ¶ 3.12).

15 Plaintiffs, however, fail to allege that the enforcement of the zoning ordinance in fact

16 caused them to provide housing to fewer individuals than before, let alone that "no other

17 suitable sites exist" for their operations.  *Int'l Church of Foursquare Gospel*, 673 F.3d at

18 1067.  To the extent Plaintiffs maintain that the cost of unspecified renovation alone was

19 a substantial burden, they have alleged no supporting facts to raise that contention from

20 the realm of "possible" to "plausible."  *See Iqbal*, 556 U.S. at 679 ("[W]here the well-

21 pleaded facts do not permit the court to infer more than the mere possibility of

22 misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is

1    entitled to relief.'") (citing Fed. R. Civ. P. 8(a)(2)).  Accordingly, the court concludes

2    that, even taking all of Plaintiffs' allegations as true, the complaint fails to allege a

3    "significantly great restriction" on Plaintiffs' religious exercise.  *See Int'l Church of*

4    *Foursquare Gospel*, 673 F.3d at 1067.  Therefore, Plaintiffs fail to state a claim under the

5    substantial burden provision of RLUIPA.  *See Int'l Church of Foursquare Gospel*, 673

6    F.3d at 1067.

7         **2.  Equal Terms**

8         The equal terms provision of RLUIPA prohibits a government from imposing or

9    implementing a land use regulation "in a manner that treats a religious assembly or

10   institution on less than equal terms with a nonreligious assembly or institution."  42

11   U.S.C.A. § 2000cc(b)(1).  The elements of this claim are (1) there must be an imposition

12   or implementation of a land-use regulation, (2) by a government, (3) on a religious

13   assembly or institution, and (4) the imposition or implementation must be "on less than

14   equal terms with a nonreligious assembly or institution."  *Centro Familiar Cristiano*

15   *Buenas Nuevas*, 651 F.3d at 1170-71.  Defendants take issue with only the fourth

16   element.  (Mot. at 17.)  The Ninth Circuit has not yet construed the "implement" term in

17   the context of a facially nondiscriminatory ordinance such as those at issue here.  *Yuma*,

18   651 F.3d at 1170-71.  However, the Ninth Circuit has construed the "impose"

19   requirement as meaning that a city "violates the equal terms provision only when a

20   church is treated on a less than equal basis with a secular comparator, similarly situated

21   with respect to an accepted zoning criteria."  *Id.*  Under this construction, a city can

22   justify a distinction drawn with respect to a religious institution by demonstrating that the

1   less-than-equal-terms are on account of a legitimate regulatory purpose, rather than the

2   fact that the institution is religious in nature.  *Id.* at 1172.  For lack of more specific

3   guidance, the court will follow the *Yuma* approach here.  *See Corp. of the Catholic*

4   *Archbishop of Seattle v. City of Seattle*, No. C13-1589 TSZ, 2014 WL 2807684 (W.D.

5   Wash. June 20, 2014) (applying the *Yuma* test).

6          Plaintiffs repeatedly allege that the City "has an official policy and/or procedure in

7   place to discriminate against Holy Ghost Church and the Macks as a result of their

8   religious beliefs."  (Am. Compl. ¶ 8.3; *see also id.* ¶¶ 3.0, 8.4(2),(3)).  The court,

9   however, is "not bound to accept as true a legal conclusion couched as a factual

10  allegation."  *Iqbal*, 556 U.S. at 678.  Accordingly, the court views Plaintiffs' legal

11  conclusions regarding religious discrimination as the "framework" of their complaint,

12  and evaluates whether that framework is supported by the factual allegations.  *See id.* at

13  679.

14         Plaintiffs' supporting allegations and incorporated documents show that  (1) "As

15  part of its religious mission, Holy Ghost Church ministers to individuals at the Mack

16  Houses" (Am. Compl. ¶ 3.2); (2) City officials sent multiple emails discussing ways to

17  regulate Mack Houses (*id.* Ex. 2); (3) "Defendants encouraged and/or promoted citizen

18  complaints in regards to the Mack Houses" (Am. Compl. ¶ 8.4); (4) "Defendants targeted

19  properties owned by and/or rented by Holy Church and the Macks with the purpose of

20  manufacturing and/or purporting land use violations" (*id.*); (5) City police officers made

21  it a "priority" to identify and address "possible code violations" of Mack Houses (*id.* Ex.

22  //

ORDER- 30

1   2); and (6) City Officials suggested denying utility easements to sites of prospective

2   Mack Houses (*id.*).

3        Because the complaint alleges that the Mack Houses, which are religious

4   institutions, were singled out by the City for enforcement of the zoning code, the court

5   concludes that Plaintiffs have adequately alleged treatment on a less than equal basis with

6   secular comparators, such as other group housing institutions.[7]  *See Yuma*, 651 F.3d at

7   1170-71.  Of course, going forward, Defendants remain free to argue that the alleged

8   distinction was drawn not based on the Mack Houses' religious nature, but rather for a

9   legitimate purpose.  *See Yuma*, 651 F.3d at 1172.  At this stage, however, Plaintiffs have

10  adequately alleged a claim under the equal treatment provision of RLUIPA.

11  **G.    Section 1983**

12       Section1983 establishes no substantive rights.  *Chapman v. Houston Welfare*

13  *Rights Org.*, 441 U.S. 600, 617 (1979). Rather, it is a vehicle for seeking a remedy for

14  violations of federal constitutional and statutory rights by government officials acting

15  under color of state law.  *Maine v. Thiboutot*, 448 U.S. 1, 8-9 (1980).  Without an

16  underlying violation of a federally protected right, a Section 1983 must fail. *See Kirtley v.*

17  *Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

18  _____

19       [7] For the purposes of this motion only, the court assumes that group housing institutions in

20  general constitute the Mack Houses' "secular comparators." *Yuma*, 651 F.3d at 1170-71.  The  parties
    have not briefed this issue.  The court notes that further development of the record may reveal a more
    specific category, such as group housing institutions for registered sex offenders, to be a more apt

21  comparator.  *See Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295,
    1313-14 (11th Cir. 2006) ("The bottom line . . . is that RLUIPA's Equal Terms provision requires equal
    treatment, not special treatment. . . . . [W]ithout identifying a similarly situated nonreligious comparator

22  that received favorable treatment, [the plaintiff] failed to establish a prima facie Equal Terms violation.").

1    Plaintiffs attempt to assert Section 1983 claims for violations of the First and

2    Fourteenth Amendments to the United States Constitution, as well as for violations of

3    FHA, RLUIPA, and the Washington State constitution.  First, Section 1983 does not

4    vindicate state constitutional violations.  *See Maine v. Thiboutot*, 448 U.S. at 8-9; *Kirtley*,

5    326 F.3d at 1092.  Therefore, Plaintiffs' Section 1983 claim predicated solely on the

6    Washington Constitution must fail.  The court dismisses that claim without leave to

7    amend.

8    Second, Section 1983 does not provide an avenue for relief for every violation of

9    federal law.  *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 119-20 (2005).

10   To "sustain a § 1983 action, the plaintiff must demonstrate that the federal statute creates

11   an individually enforceable right in the class of beneficiaries to which he belongs."  *Id.*

12   "Even after this showing, "there is only a rebuttable presumption that the right is

13   enforceable under § 1983."  *Id.*  A defendant "may defeat this presumption by

14   demonstrating that Congress did not intend that remedy for a newly created right."  *Id.*

15    "This congressional intent can be inferred when Congress has passed a sufficiently

16   comprehensive legislative scheme to address violations of a given right."  *Ahlmeyer v.*

17   *Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1055-56 (9th Cir. 2009); *see also Middlesex*

18   *Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19-20 (1981). "When the

19   remedial devices provided in a particular Act are sufficiently comprehensive, they may

20   suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983."

21   *Ahlmeyer*, 555 F.3d at 1055.

22   *//*

1    "The Supreme Court has developed a three-prong framework for determining

2    whether a particular statutory provision gives rise to a federal right' redressable via

3    §1983. *Ball v. Rodgers*, 492 F.3d 1094, 1104 (9th Cir. 2007) (quoting *Blessing v.*

4    *Freestone*, 520 U.S. 329, 340 (1997)).  Specifically, courts must consider whether: (1)

5    'Congress . . . intended that the provision in question benefit the plaintiff'';' (2) the

6    plaintiff has 'demonstrated that the right assertedly protected by the statute is not so

7    vague and amorphous that its enforcement would strain judicial competence'; and (3) 'the

8    statute . . . unambiguously imposes a binding obligation on the States,' such that 'the

9    provision giving rise to the asserted right is couched in mandatory, rather than precatory

10   terms.'" *Id.* (quoting *Blessing*, 520 U.S. at 340-41) (alterations omitted).

11       The FHA provides that "it shall be unlawful . . . to discriminate in the sale or

12   rental of, or to otherwise make unavailable or deny, a dwelling to any buyer or renter

13   because of a handicap."  *See* 42 U.S.C. § 3604(f)(1).  And RLUIPA provides that "[N]o

14   government shall impose or implement a land use regulation in a manner that treats a

15   religious assembly or institution on less than equal terms with a nonreligious assembly or

16   institution."  42 U.S.C § 2000cc-2(b)(1).  Based on these provisions' plain language, the

17   court concludes that the statutes satisfy the three-prong framework set forth in *Blessing*,

18   and therefore presumptively give rise to federal rights redressable by 1983.  *See Ball*, 492

19   F.3d at 1104.

20       However, because both of these statutes include private rights of action, a more

21   difficult question is whether "the remedial devices provided in [the acts] are sufficiently

22   comprehensive, they may suffice to demonstrate congressional intent to preclude the

1 | remedy of suits under § 1983." *Ahlmeyer*, 555 F.3d at 1055; *see* 42 U.S.C § 2000cc-2(a);

2 | 42 U.S.C. § 3613(a).  Although it does not appear that any appellate court has yet

3 | addressed these issues, the court notes that a several district courts have found that

4 | violations of the FHA are not enforceable under Section 1983.  *See, e.g.*, *Sinisgallo v.*

5 | *Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 333-34 (E.D.N.Y. 2012); *S. Middlesex*

6 | *Opportunity Council, Inc. v. Town of Framingham,* No. 07–CV–12018, 2008 WL

7 | 4595369, at *15-16 (D. Mass. Sept. 30, 2008).  Additionally, in a recent case involving

8 | both RLUIPA and Section 1983 claims, the Ninth Circuit held that RLUIPA did not

9 | subject state officers to liability for monetary damages in their individual capacities, but

10 | gave no indication that a plaintiff could nonetheless circumvent that conclusion by

11 | bringing an RLUIPA claim under Section 1983.  *See Wood v. Yordy*, 753 F.3d 899, 903

12 | (9th Cir. 2014).

13 | 	Defendants, however, have failed to challenge Plaintiffs' Section 1983 claims on

14 | this basis.  (*See generally* Mot.; Reply.)  Although the issue of whether FHA and

15 | RLUIPA claims form an appropriate predicate for a Section 1983 action must be

16 | addressed eventually, the court declines to decide issues not properly raised in the

17 | motions before it.  Therefore, for the same reasons as discussed in Section III.H, the court

18 | dismisses Plaintiffs' Section 1983 claim based on the FHA for failure to sufficiently

19 | alleges a violation of the FHA with leave to amend.  The court does not dismiss

20 | Plaintiffs' Section 1983 claim based on RLUIPA.

21 | 	Finally, in their responsive brief, Plaintiffs clarify that they intend to allege

22 | Section 1983 claims based on violations of the free exercise clause of the First

1  Amendment and violations of the due process and equal protection clauses of the

2  Fourteenth Amendment.  (Resp. at 22-23.)  The court finds that the amended complaint

3  fails to state any of those claims.

4      To prevail on a selective enforcement claim under the equal protection clause, "a

5  plaintiff must demonstrate that enforcement had a discriminatory effect and the police

6  were motivated by a discriminatory purpose."  *Rosenbaum v. City & Cnty. of San*

7  *Francisco*, 484 F.3d 1142, 1152-53 (9th Cir. 2007) (citing *Wayte v. United States*, 470

8  U.S. 598, 608 (1985)).  "To establish a discriminatory effect, the claimant must show that

9  similarly situated individuals were not prosecuted."  *Id.* (alterations omitted) (citing

10  *United States v. Armstrong,* 517 U.S. 456, 465 (1996)).  Although "the standard for

11  proving discriminatory effect is a demanding one," in order to state a claim, a plaintiff

12  "need only allege some facts, either anecdotal or statistical, demonstrating that similarly

13  situated defendants could have been prosecuted, but were not."  *Lacey v. Maricopa Cnty.*,

14  693 F.3d 896, 920 (9th Cir. 2012).  To show discriminatory purpose, a plaintiff must

15  establish that "the decision-maker selected or reaffirmed a particular course of action at

16  least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable

17  group."  *Id.* (citing *Wayte,* 470 U.S. at 610).  Specifically, a plaintiff must show that the

18  government "decided to enforce the law against him on the basis of an impermissible

19  ground such as race, religion or exercise of constitutional rights."  *Lacey*, 693 F.3d at

20  920.

21      Plaintiffs' amended complaint founders on the second element:  discriminatory

22  purpose.  Although the complaint alleges anecdotal facts from which it can be inferred

ORDER- 35

1   that the City did not enforce the zoning regulations against similarly situated institutions,

2   the complaint fails to establish that the City decided to enforce the regulation against

3   Plaintiffs *because of* their religion.  As discussed in the preceding section, the court

4   disregards Plaintiffs' "formulaic recitation of the element" that the City "has an official

5   policy . . . to discriminate against Holy Ghost Church and the Macks as a result of their

6   religion." (Am. Compl. ¶ 8.3); *see Ashcroft*, 556 U.S. at 678.  Besides repeating this

7   legal conclusion multiple times, the amended complaint provides no factual allegations

8   supporting a finding of discriminatory purpose.  (*See generally* Am. Compl.)  In fact, the

9   City officials' emails attached to the amended complaint that purportedly evidence the

10   City's discriminatory policy do not once mention Plaintiffs' religion, or any religion at

11   all.  (*See* Am. Compl. Ex. 2.)  Rather, the emails unequivocally show that the City's

12   concern regarding the Mack Houses is based on the fact that the Mack Houses cater to

13   registered sexual offenders.  (*See id.*)  The court is "not required to accept as true

14   conclusory allegations which are contradicted by documents referred to in the

15   complaint."  *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998); *see*

16   *also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Therefore,

17   the amended complaint fails to sufficiently allege a discriminatory purpose.  The court

18   dismisses Plaintiffs' equal protection claim with leave to amend.

19          Turning to Plaintiffs' claim under the free exercise clause of the First Amendment,

20   the court concludes that Plaintiffs do not challenge the zoning ordinances themselves.

21   After all, the amended complaint does not even cite the ordinances, and makes no claim

22   that the ordinances are unconstitutional on their face or as applied to Plaintiffs.  (*See*

1   *generally* Am. Compl.)  Therefore, it appears Plaintiffs only challenge the City's

2   allegedly selective enforcement of the ordinances.[8]  (*See id.* at  3.27.)

3      Under the free exercise clause, a government may not, among other things,

4   "impose special disabilities on the basis of religious views or religious status."  *Alpha*

5   *Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790, 804-05 (9th Cir. 2011).  As such, a

6   showing that a group "was treated differently because of their religious status" may

7   support a valid free exercise claim.  *Id.*  Here, Plaintiffs' free exercise claim fails for the

8   same reason that its equal protection claim fails:  the amended complaint fails to show

9   that Plaintiffs were, in fact, treated differently *because of* their religion.  Therefore, the

10  court dismisses Plaintiffs' free exercise claim with leave to amend.

11     With respect to Plaintiffs' due process claim, the amended complaint does not

12  adequately allege either of the two elements that comprise a procedural due process

13  claim:  "(1) a deprivation of a constitutionally protected liberty or property interest, and

14  (2) a denial of adequate procedural protections."  *See Brewster v. Bd. of Educ. of*

15  *Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  Plaintiffs flatly allege

16  that "Defendants subjected Holy Ghost Church and the Macks to a Hearing Examiner

17  procedure which failed to comply with basic tenets of due process."  (Am. Compl.

18  ¶ 8.4(6).)  The court disregards this allegation because it is merely "a formulaic recitation

19

20     [8] To the extent Plaintiffs do challenge the zoning ordinances, the zoning appear to be "of neutrality and general applicability" because they do not "aim to infringe upon or restrict practices because of their religious motivation," and do not "in a selective manner impose burdens only on conduct

21  motivated by religious belief."  *San Jose Christian Coll.*, 360 F.3d at 1031.  As such, the ordinances "pass[] constitutional muster unless [they are] not rationally related to a legitimate governmental interest."

22  *Id.*  Plaintiffs fail to allege that the ordinances are not rationally related to a legitimate governmental interest.  (*See generally* Am. Compl.)

1    of the elements of a cause of action." *Ashcroft*, 556 U.S. at 678.  Other than the ability to

2    cross-examine witnesses (*see* Am. Compl. ¶ 3.27), the amended complaint fails to

3    identify which "basic tenets of due process" were omitted.  Therefore, the court dismisses

4    Plaintiffs' due process claim.[9]

5    **H.    Section 1988**

6           In their complaint, Plaintiffs claim that "42 U.S.C. § 1988 provides individuals

7    with a cause of action against conspiracies to violate those individuals' Constitutional

8    rights."  (Am. Compl. ¶ 9.2.)  That statement is incorrect.  In fact, Section 1988 merely

9    provides that a court may award attorneys' fees to the prevailing party in an action to

10   enforce certain civil rights laws.  *See* 42 U.S.C. § 1988; *Maine v. Thiboutot*, 448 U.S. 1,

11   8-9 (1980).  In their responsive briefing, Plaintiffs defend a claim under 42 U.S.C.

12   § 1985.  (*See* Resp.)  That statute does define a claim for conspiracy to interfere with civil

13   rights.  *See Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989).  However,

14   that statute does not appear anywhere in Plaintiffs' amended complaint (*see generally*

15   Am. Compl.).  Plaintiffs cannot state a claim under Section 1988 for conspiracy to

16   interfere with civil rights.  The court dismisses Plaintiffs' claim under Section 1988 with

17   leave to amend.  *See Sonoma Cnty. Ass'n of Retired Emps.*, 708 F.3d at 1117.

18   //

19   _____

20        [9] To the extent Plaintiffs seek to assert a substantive due process claim, that claim is not viable
     because it is redundant to their claim for selective enforcement under the First Amendment.  Where a
21   particular Amendment "provides an explicit textual source of constitutional protection" against a
     particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive
22   due process,' must be the guide for analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994)
     (citing *Graham v. Connor*, 490 U.S. 386, 395 (U.S. 1989)).

**I.      Violation of the Washington Constitution**

Defendants do not move to dismiss Plaintiffs' claim under the Washington Constitution.  (*See* Mot. at 29-30.)  Rather, Defendants ask the court to decline to exercise supplemental jurisdiction over the claim if the federal claims are dismissed.  (*See id.*)  A district court may decline to exercise supplemental jurisdiction over a claim if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c).

Here, the court has not dismissed all federal claims:  Plaintiffs' RLUIPA claim remains.  Absent a showing that one of the other three criteria apply, the court will continue to exercise supplemental jurisdiction over the Washington Constitution claim.

**J.      Plaintiffs' Constitutional Arguments**

In their responsive briefing, Plaintiffs allege that LUPA violates both the United States Constitution and the Washington Constitution.  Plaintiffs, however, have not brought a claim for a declaratory judgment that LUPA is unconstitutional.  (*See generally* Am. Compl.)  Moreover, it is clear that Plaintiffs raised their constitutional challenges in reaction to Defendants' assertion that Plaintiffs' failure to assert a timely LUPA claim also barred their federal statutory claims.  (*See* Reply to MSJ (Dkt. # 49) at 3 ("In response, Plaintiffs asserted if Marysville's interpretation of LUPA was correct, then LUPA was facially unconstitutional and/or unconstitutional as applied to the Church and

1    Pastors with regard to their free exercise of religious rights."); Resp. at 9 (identifying

2    "Does Washington's Land Use Petition Act (LUPA) violate U.S. Const. Art. 6, § 2 and

3    Wash Const. Art. I, § 2 facially or as applied by purporting to disallow federal causes of

4    action relating to land use decisions?" as one of the questions to be decided by the court).

5    The court, however, has already ruled that LUPA does not bar Plaintiffs' federal statutory

6    claims.  *See infra* Section III.C.2.  As such, the court does not need to—and will not—

7    address Plaintiffs' constitutional challenges to LUPA at this time.

8            The court notes that Plaintiffs' have also brought a so-called "cross-motion for

9    summary judgment" asking the court to find that LUPA is "unconstitutional on its face

10   and/or as applied to Plaintiffs."  (MSJ (Dkt. # 44) at 1.)  Again, Plaintiffs make clear that

11   this "cross-motion" addresses the City's contention that Plaintiffs' failure to file a timely

12   LUPA claim barred Plaintiffs' federal statutory claims.  (Reply to MSJ at 4 ("Plaintiffs

13   filed a cross motion for summary judgment contending Marysville's LUPA defense was

14   based on an interpretation of LUPA, which was inconsistent with Wash. Const. art IV,

15   § 6, art. 1, § 11, and art. XXVI. ECF No. 46.").)  The court, however, has already

16   adjudicated that dispute, and found that Plaintiffs' federal statutory claims are not barred

17   by LUPA.  *See infra* Section III.C.2.  As such, Plaintiffs' motion for summary judgment

18   on that topic is moot.

19           To the extent that Plaintiffs intended to argue in their "cross-motion" that LUPA's

20   process is otherwise unconstitutional, the basis for them to do so is unclear:  Plaintiffs

21   have not alleged a declaratory judgment claim to declare LUPA unconstitutional and

22   there is no indication that LUPA bars or influences any of Plaintiffs' remaining claims.

1    In fact, Plaintiffs' amended complaint is devoid of any mention of LUPA, let alone any

2    contention that the applicability of LUPA to Plaintiffs' land use decision violates one of

3    the federal statutes or state constitutional rights raised in their complaint.  The court will

4    not adjudicate the constitutionality of this state statute in a vacuum.  Accordingly, the

5    court DENIES Plaintiffs' "cross-motion for summary judgment" regarding LUPA as

6    moot and/or unripe without prejudice to raising the arguments contained therein at an

7    appropriate time.

8    **K.      Leave to Amend**

9           Finally, should Plaintiffs choose to amend their complaint, the court cautions that

10   the Plaintiffs "may not attach a large number of exhibits to [their] claims with the

11   expectation that the Court will read the exhibits and extract the necessary factual pieces

12   to construct a cognizable claim on Plaintiff[s'] behalf."  *Cantu v. Garcia*, No. 1:09-CV-

13   00177-SKO PC, 2010 WL 2605336, at *2 (E.D. Cal. June 28, 2010).  Such a tactic

14   conflicts with Rule 8 of the Federal Rules of Civil Procedure, which requires Plaintiffs to

15   provide "a short and plain statement of [their] claim."  Fed. R. Civ. P. 8(a)(2);  *Velasquez*

16   *v. Clark*, No. 108CV00434OWWWMWPC, 2009 WL 735150, at *3 (E.D. Cal. Mar. 17,

17   2009).  "To the extent that the factual deficiencies in Plaintiff[s'] claims are cured by

18   facts revealed in [the] exhibits but not in the body of [the] complaint, Plaintiff[s are]

19   advised that [they] should file an amended complaint that specifically alleges those facts

20   instead of relying on exhibits to present those facts."  *Cantu*, No. 1:09-CV-00177-SKO

21   PC, 2010 WL 2605336, at *2.

22

1

**IV.   CONCLUSION**

2          For the foregoing reasons, the court grants in part and denies in part Defendants'

3   motion to dismiss (Dkt. # 35), and grants Plaintiffs leave to amend their complaint as

4   described above.  Additionally, the court DENIES Plaintiffs' motion for summary

5   judgment (Dkt. # 44) without prejudice to raising the arguments therein at a proper time.

6          Dated this 7th day of April, 2015.

7

8

9          _____

10          JAMES L. ROBART
           United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22